## Edward McCoy v. Mrs. L. C. Pease.

Decided November 22, 1898.

**1. Deed—Description.**

A description of a headright certificate by reference to the person to whom it was issued, in a conveyance thereof, is sufficient.

**2. Trespass to Try Title—Equitable Title.**

A mere trespasser can not, in an action of trespass to try title, defend on the ground that plaintiff's title is equitable merely and not legal, and his claim a stale demand.

**3. Ancient Instrument—Custody.**

The custody of a conveyance of a headright certificate by a person to whom the grantees therein subsequently conveyed the certificate, and by his estate after his death, is the proper custody to support its admission in evidence as an ancient instrument.

APPEAL from La Salle. Tried below before Hon. A. L. McLane.

*S. T. Dowe* and *Lane & Hicks,* for appellant.

*Wm. Brueggerhoff,* for appellee.

NEILL, ASSOCIATE JUSTICE.—This is appellant's second appeal in this case from a judgment against him in favor of the appellee. The opinion of this court on the first appeal will be found in 17 Texas Civil Appeals, 303, to which reference is made for a statement of the nature and character of this suit.

*Conclusions of Fact.*—The title and the facts upon which is based the appellee's claim to the land in controversy are as follows:

1. An instrument bearing date May 31, 1844, to Wm. C. Johnston by John McGinis, Ann McGinis, Ames Chumley, Harriet Chumley, James W. Bridges, Matilda Cherry, G. T. W. Collins, Martha Ann Collins, William Coldwell, and Elizabeth Coldwell, conveying to W. C. Johnston "all their right, title, and interest unto one league and labor of land, it being the headright of James Bridges, deceased." Which instrument binds the grantors and their heirs unto Wm. C. Johnston in the sum of $5000, making a full and bona fide title to said league and labor. The instrument stipulates that Johnston "is to have said land surveyed and carried

into the title at his own expense." This instrument is attested by R. O. Beene, Bluford Mitchell, Borney Rhode, and James K. Beene, and authenticated for record by the affidavit of the subscribing witness, Bluford Mitchell, and was duly recorded in Nacogdoches County.

2. A transfer indorsed on the same paper on which the preceding instrument was written, bearing date the 18th day of March, 1845, by Wm. C. Johnston, conveying to F. J. Ham and E. J. De Bard in the following language: "All right, title, and interest that I have in and to the within bond and certificate." In explanation of the transfer Johnston wrote below it as follows: "The certificate transferred above was granted to James Bridges, Sr., by the Board of Land Commissioners of San Augustine County for a league and labor of land, and the bond to me therefor is the same which is recorded in Book H, pages 90 and 91, of Nacogdoches County Records of Deeds." This instrument was attested by Bluford Mitchell and was properly acknowledged before O. L. Holmes, clerk of the County Court of Nacogdoches County. Both of the above instruments were duly recorded in La Salle County on the 19th day of March, 1893.

3. James Bridges, the grantee of the original certificate upon which the duplicate by virtue of which the land in controversy was patented, died prior to May 31, 1844, and his wife Elizabeth died in 1860 or 1861, in Angelina County, Texas. Ann McGinis, the wife of John McGinis; Harriet Chumley, the wife of Ames Chumley; Martha Collins, the wife of G. T. W. Collins; Elizabeth Coldwell, wife of Wm. Coldwell, whose names are assigned to the first instrument mentioned, were daughters of James and Elizabeth Bridges, and Matilda Cherry, who married John Cherry, whose name also appears assigned to said instrument, is their granddaughter, she being the only child of Ross Bridges, their son. James W. Bridges, another grantor in the instrument first mentioned, was the son of the said James Bridges to whom the certificate was issued.

4. F. J. Ham, one of the grantees in the second instrument before mentioned, died in October, 1856, leaving a will in which Lucinda W. Ham, E. A. Swan, and Stephen B. Reeves were appointed executrix and executors. His estate was administered under said will, which was duly probated in Smith County, Texas, and letters granted to his said executors. His wife, Lucinda W. Ham, and his children, Desha B. Ham and Lucy Ham, were his only heirs or devisees under said will. Mrs. L. W. Ham, the wife of F. J. Ham, deceased, is still living in Tyler, Texas. Desha B. Ham, the daughter of L. W. Ham, married James S. Grinnan.

5. Stephen B. Reeves, as executor of F. J. Ham from the time of his testator's death until the final settlement of his estate in 1871, 1872, and 1873, had in his possession both instruments before mentioned in these conclusions. (We say both, because his testimony shows he had in his possession the second instrument mentioned, and as they were both written on the same piece of paper, and were inseparable, he could not have had in his possession one without having possession of the other.) These

transfers he found among the papers of F. J. Ham, deceased, and kept them until the estate was partitioned. He also received the original James Bridges certificate for one league and labor of land from the surveyor of Smith County, Texas, in this way: "F. J. Ham located said certificate in Smith County, Texas, on what is known as the seven leagues granted to Don Tomas Queveda on the 18th day of May, 1848, and had a survey by virtue thereof made on said seven-league grant. The heirs of Queveda sued Ham in the Federal court to recover the land, and after his death in 1856 his executors were made parties to the suit, who, finding the Queveda the oldest survey, withdrew said certificate from the location, being so authorized by the County Court of Smith County, Texas." The estate of F. J. Ham, deceased, and E. J. De Bard claimed the certificate as far back as May 18, 1846. Stephen B. Reeves, as executor of F. J. Ham, deceased, kept possession of the certificate until the 18th day of August, 1860, when he turned it over to E. J. De Bard for location, who held the certificate until the final settlement of the estate of F. J. Ham, and Mrs. Reeves then delivered it to J. S. Grinnan, who married Desha B. Ham, and it was afterwards lost and De Bard made application to the General Land Office for and obtained a duplicate, which is as follows:

"Duplicate Certificate. No. 29-117, Class 1st. Quantity, one league and labor. General Land Office, Austin, Texas, February 11, 1870.— This is to certify that satisfactory evidence having been produced of the loss of headright certificate No. 107, Class 1st, issued by the Board of Land Commissioners for San Augustine County, Republic of Texas, to James Bridges for one league and labor of land, dated the 20th day of June, 1839. This duplicate therefore will entitle the said James Bridges [mutilated] the benefits granted in said original headright certificate.

"In testimony whereof I hereunto set my hand and affix the impress, of the seal of said office, the date first above written.

"Jacob Keuchler, Commissioner."

6. A deed bearing date December 15, 1875, executed by E. J. De Bard, Mrs. L. W. Ham, J. S. Grinnan, Mrs. Desha D. Grinnan, and Miss Lucy Ham, whereby, in consideration of locating and obtaining the patent for the James Bridges headright for one league and labor of land and $1.06 paid, they convey to P. de Cordova, H. C. Withers, and James P. McKinney 1636 acres of land by metes and bounds described in appellees' petition. This deed was duly acknowledged and recorded.

7. A patent No. 191, volume 21, issued by the State of Texas on June 22, 1875, to James Bridges, his heirs or assigns, by virtue of duplicate headright certificate No. 29-117, issued to said Bridges by the Commissioner of the General Land Office February 11, 1870, for 20,355,000 square varas of land, lying in La Salle County, which includes the land sued for.

8.   A deed executed by H. C. Withers to James McKinney and P. de Cordova, conveying them all his interest in the 1636 acres described in plaintiff's petition, which deed is dated May 8, 1876, and duly recorded and acknowledged.

9.   A deed executed on the 17th day of January, 1880, by Fannie C. McKinney to P. de Cordova, conveying him all her interest in said 1636 acres of land.   Fannie C. McKinney, the grantor in the last named instrument, is the sole legatee of James P. McKinney, who died on the 4th day of September, 1897.

10.   A deed from P. de Cordova of date July 19, 1886, conveying to appellee the identical tract of land described in appellant's petition.

11.   The appellant McCoy claims a part of the land sued for under a deed from T. B. Bridges and wife, dated January, 1894.   This deed recites that the grantors are heirs of James Bridges, and that they conveyed one-seventh of all lands patented to James Bridges in La Salle County.   There was no evidence introduced tending to show that either T. B. Bridges or his wife is an heir of James Bridges, deceased.   On the contrary, the only evidence introduced shows that neither is an heir of the James Bridges, the grantee in the certificate by virtue of which the land in controversy was located and patented.

12.   The appellant has had 1200 acres of the land sued for under fence since 1890, the rental value of which is three cents per acre per annum since two years prior to the filing of this suit, but appellee claims only three years rent.

*Conclusions of Law.*—In our opinion, when this case was before us on a prior appeal, we held that the conveyance from the heirs of James Bridges to Wm. C. Johnston, described in our first conclusion of fact, was sufficient to pass the grantors' interest in the headright certificate of James Bridges, whether is was located or not.   The facts now before us show that the certificate was unlocated at the time such transfer was made.   From its very nature there could be but one headright certificate of James Bridges, and as the conveyance describes it as such, it is sufficiently identified by the description, and the conveyance to the extent of their interest, vested the title of the grantors in Wm. C. Johnston.   It is not necessary for us to inquire whether such title was legal or equitable, for the appellant, being a trespasser upon the premises in controversy, is not interested in such question.   He is an entire stranger to the title held under said certificate, and if it should be conceded the title is simply an equitable one, he can not invoke in his favor the doctrine of stale demand.

The conveyance under consideration is an "ancient instrument," and was found with the certificate which it conveyed among the papers of F. J. Ham (one of the parties to whom it was transferred by Wm. C. Johnston) by his executor, and remained in his custody, as is shown by our conclusions of fact, until the administration on Ham's estate was closed.   That was the proper custody for this instrument, and it is immaterial from whom the appellee received it, for it must have come to

her hands immediately through some one who received it from the proper custodian. No suspicion is cast upon its genuineness. One of the witnesses who, as an heir of James Bridges, would be entitled to an interest in the land located by virtue of the certificate if the transfer in question is not genuine, testified to the heirship of the grantors in said conveyance. He must have known the object and effect of his testimony, yet neither he nor any of Bridges' heirs assert title to the land or question appellee's claim to it. The validity of the transfer is only questioned by a stranger to the title derived through the certificate conveyed, who is a naked trespasser upon the premises involved in this suit.

The judgment of the District Court is affirmed.

*Affirmed.*                          °