## BLACKWELL–WIELANDY CO. v. SABINE SUPPLY CO.

### No. 2076.

Court of Civil Appeals of Texas. Beaumont. April 7, 1931.

Rehearing Denied April 15, 1931.

Crook, Lefler, Cunningham & Murphy, of Beaumont, for appellant.

W. E. Lea, of Orange, for appellee.

WALKER, J.

This is an appeal from the order of the district court of Orange county sustaining appellee's plea in abatement against appellant's petition, and dismissing the case.

Appellant pleaded:

First. That it was a corporation "organized under the laws of the State of Missouri, having its principal place of business in St. Louis, Missouri, successor in interest of Blackwell-Wielandy Book & Stationery Company, a Missouri corporation." The suit was against appellee under the allegation that it was "a Texas corporation having its principal office and place of business at Orange, Orange County, Texas." There was no allegation that appellant had a permit to do business in Texas, nor did appellant allege an excuse for its failure to secure a permit.

Second. It was alleged that on the 14th of March, 1924, appellant entered into a written contract with appellee to make for it "a general hardware catalogue" in accordance with the terms, stipulations, and specifications set forth in the contract, a copy of which was made an exhibit to the petition, and its principal conditions formally pleaded as the basis of appellant's cause of action.

Third. The contract, as pleaded, was evidenced by a letter written from St. Louis, Mo., by appellant to appellee dated March 1, 1924, setting forth all the obligations of the contract and the rights and duties of the parties thereto, and closing with the following condition: "An acceptance of this estimate constitutes a contract between us." The letter was duly signed by appellant and duly accepted by appellee at Orange, Orange county, Tex., as follows: "Accepted March 15, 1924, The Sabine Supply Company by B. F. Brown, President."

Fourth. The main conditions of the contract on the issue made by appellee's plea in abatement were as follows:

(a) "The Sabine Supply Company agrees on its part to furnish complete data, showing all items to be listed in catalog 4 months from date of contract. We agree to deliver F. O. B. St. Louis 100 complete catalogs within 30 working days after complete final stone proofs, including index, have been O. K'd by you and received by us, and the balance within 30 working days thereafter. In the event of any books being imperfect, misprinted or defective in binding, we will put the same in acceptable condition at our expense upon their return to us."

(b) "The catalog is to be compiled in a systematic manner by the method we have devised and the jobber agrees to co-operate with the publisher in checking, correcting and approving the compiled copy before it is set in type, and placing on each compiled page his O. K. as our authority to set the same in type. The catalog is to be compiled a section at a time and in numerical sequence as data furnished us. When a section has been completed the compiled pages will be forwarded to the customer for checking and corrections. No compiled page will be set in type until the same has been returned with customer's O. K. thereon."

(c) "We will furnish you two stone proofs of each page, one of which you are to retain, and the other to be returned with such corrections as you may find necessary. These corrections to be charged to you, as specified in the estimate. All copy and proofs will be forwarded charges prepaid, and it is expected that the same shall be returned prepaid."

(d) "Payments to be made as follows: 30 days after receipt of invoice. Terms net, no discount."

(e) "You agree to appoint one man who will have exclusive authority to deal with our Compilation Department in furnishing data, checking, correcting and approving the compiled copy, conduct correspondence relating to this catalog, and whose O. K. on compiled copy and proof sheets will be final."

In describing the manner of the execution of the contract, appellant pleaded as follows: "The Sabine Supply Company, defendant herein, selected a man by the name of Ingram, who was then in their employ, for the purpose of having exclusive authority to deal with the Compilation Department as above set forth and in this connection the plaintiff says that after said contract was executed the plaintiff sent from its office in St. Louis a representative to the office of the Sabine Supply Company at Orange Texas, who worked with the said Ingram, the representative of the Sabine Supply Company, in securing all of the data on what was known as data sheets, which was furnished by said The Sabine Supply Company through its agent and representative Mr. Ingram."

Fifth. The contract price for all work to be done under the contract was fully pleaded, together with the price to be paid for additions, changes, and alterations in the work. It was further pleaded that the catalogues were duly printed and delivered to and accepted by appellee; that under the contract the cost to appellee of the catalogues amounted to the sum of $15,687; that this sum was invoiced to appellee under two invoices, first for the sum of $12,691, which was paid, and, second, for the sum of $2,996, for 1,498 hours of additional labor and service performed at the request of the defendant, for which it agreed to pay a sum of $2 per hour, making a total of $2,996. The suit was for the second invoice, on allegations that, though the sum was due and demand had been made therefor, appellee refused to pay it.

Against this petition appellee filed the following plea in abatement: "And now comes the defendant by its attorney in the above styled and numbered cause and says that plaintiff is a foreign corporation, and at the time of the commencement of this suit, plaintiff was a foreign corporation and had not complied with the laws of Texas, which require a foreign corporation doing business within the State to file its articles of incorporation with the Secretary of the State of Texas, nor has it received from said Secretary a permit to do business in the State and is not legally qualified to maintain this action in this court; and this the defendant is ready to verify. Wherefore defendant prays judgment of this court whether plaintiff can maintain this action herein, and that defendant be dismissed with his costs, etc."

Without hearing any proof, the plea in abatement was sustained, and judgment entered dismissing the suit. Appellant has duly prosecuted its appeal from this judgment.

### Opinion.

■■■ The plea in abatement was erroneously sustained. Where it affirmatively appears in the petition a foreign corporation was transacting business in this state at the time its cause of action accrued, to defeat a plea in abatement, the plaintiff must both allege and prove that at the time its cause of action accrued it was operating under a permit from the appropriate state authority. But, where the petition does not disclose that the plaintiff is engaged in business in this state or that the demand did not arise from an intrastate transaction, then the plaintiff need not allege that it had a permit in order to avoid the force of the plea in abatement. The authorities sustaining these propositions are cited by Judge Smith in Washington-Dean Co. v. Crow Bros. (Tex. Civ. App.) 1 S.W.(2d) 914. Again it has been said that, where there is nothing in the petition filed by a foreign corporation from which it can be inferred that it is engaged in business in this state, or that the transaction out of which the cause of action arose took place in this state, the petition need not show that the plaintiff has a permit to do business in this state. Brin v. Wachusetts Shirt Co. (Tex. Civ. App.) 43 S. W. 295; King v. Monitor Drill Co., 42 Tex. Civ. App. 288, 92 S. W. 1046; Brown v. Guarantee Savings Loan & Investment Co., 46 Tex. Civ. App. 295, 102 S. W. 138; New State Land Co. v. Wilson (Tex. Civ. App.) 150 S. W. 253; Jackson Woolen Mills v. Moore (Tex. Civ. App.) 154 S. W. 642.

■■ Appellant fully pleaded all the circumstances of its cause of action. From the allegations of the petition appellee's cause of action was an interstate transaction. The catalogues were to be printed in the city of St. Louis, Mo., and delivered and accepted by appellee in the city of St. Louis, Mo. That appellant sent a representative from its office in St. Louis to the office of appellee, Sabine Supply Company, to assist in the preparation of the data, did not make the transaction intrastate. Thus it was held in Caddell v. J. R. Watkins Medical Co. (Tex. Civ. App.) 227 S. W. 226, that, where produce was manufactured in another state and shipped to the

purchaser in this state, the transaction was interstate commerce, and the manufacturer was not required to obtain a permit in order to lawfully carry on such commerce. In Law Reporting Co. v. Texas Grain & Elevator Co. (Tex. Civ. App.) 168 S. W. 1001, it was held that a contract to furnish a transcript of the testimony at a hearing before the Interstate Commerce Commission was not transacting business in Texas, where the work was performed in a sister state and transmitted to the purchaser in Texas. In Leschen & Sons Rope Co. v. Moser (Tex. Civ. App.) 159 S. W. 1018, it was held that a sale by a foreign corporation of the material for an aerial tramway did not constitute doing business within the state, even though it furnished a superintendent of construction. The proper construction of article 1529, R. S., upon which the lower court based its judgment, permits corporations to sue in this state for the purchase price of interstate shipments. Texas & P. Railway Company v. Davis, 93 Tex. 378, 54 S. W. 381, 55 S. W. 562.

As appellant was suing upon an interstate transaction, it follows that the judgment of the lower court must be reversed, and the cause remanded for a new trial.