## FLEMING v. TODD et al.
### No. 2097.

Court of Civil Appeals of Texas. Beaumont.
Sept. 16, 1931.

Rehearing Denied Sept. 23, 1931.

"The State of Texas, County of Jefferson. Know all men by these presents; That I, J. V. Fleming, of the County of Maricopa, State of Arizona, for and in consideration of the sum of three thousand two hundred eighty-five ($3285.00) dollars to me paid, and secured to be paid by Oliver J. Todd and John O. Banks of that part of the purchase price of the hereinafter described land, now owing to the State of Texas, the same amounting to $480.45, and the further assumption by Oliver J. Todd and John O. Banks of all the taxes now owing on the land hereby conveyed, the same amounting to $149.50, which amounts the vendee herein assumes. And the execution and delivery to me by Oliver J. Todd and John O. Banks of two vendor's lien notes of even date herewith, Note No. One being in the sum of $1800.00 and due February 1st, 1921, and Note No. Two being for $856.05, and due Feb. 1st, 1922, both of said notes bearing interest from date at the rate of eight per cent per annum and providing for the usual 10% as attorneys fees if collected by suit or if placed in the hands of an attorney for collection after maturity, have granted, sold and conveyed, and by these presents do grant, sell and convey unto the said Oliver J. Todd and John O. Banks of the County of Jefferson, State of Texas, all that certain tract and parcel of land lying and being situated in Orange County, Texas, and more particularly described as the Lizzie Higginbotham Survey of land, certificate No. 689, and containing 368½ acres of land.

"To have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Oliver J. Todd and John O. Banks, their heirs and assigns forever; and I do hereby bind myself, my heirs, executors and administrators, to warrant and forever defend, all and singular the said premises unto the said Oliver J. Todd and John O. Banks, their heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the east forty acres of said survey.

"But it is expressly agreed and stipulated that the vendor's lien is retained against the above described property, premises and improvements, until the above described notes, and all interest thereon are fully paid according to their face and tenor, effect and reading, when this deed shall become absolute.

"Witness my hand at Beaumont, Texas, this 27th day of August, A. D., 1920.

"J. V. Fleming,

"$3.50 Revenue affixed."

Contemporaneously with the execution of the deed the parties thereto entered into the following written contract:

Howth, Adams & Hart, of Beaumont, and Dies, Stephenson & Dies, of Orange, for appellant.

Todd, Pipkin & Todd, Butler & Reeves, W. D. Gordon, Orgain, Carroll & Bell, and Thos. J. Baten, all of Beaumont, Harry Holmes, of Houston, J. T. Adams, of Orange, and Thompson, Mitchell, Thompson & Young, of Dallas, for appellees.

WALKER, J.

On the 27th day of August, 1920, appellant, J. V. Fleming, executed and delivered to appellees, Oliver J. Todd and John O. Banks, the following deed:

"The State of Texas, County of Jefferson. It is mutually agreed by and between J. V. Fleming, party of the first part, and John O. Banks and Oliver J. Todd, parties of the second part, as follows:

"That first party has sold second parties the Lizzie Higginbotham Survey in Orange County, Texas, as per deed of this day, estimating the acreage and selling at ten dollars per acre.

"It is mutually agreed that first party and second parties will have said land surveyed at their joint expense, sharing said expense equally between them, and upon said survey will compute the actual acreage to which first party has title not in conflict with prior surveys, and if less than the estimated amount first party will pay either in money or credit upon notes held by him, or in land of equal value in Orange County, Texas, making up said deficiency, and if in excess of the estimated amount second parties will execute additional notes covering the increased acreage at ten dollars per acre less liens against it and payable at like times as the other notes heretofore executed.

"Witness our hands in duplicate this 27th day of August, A. D., 1920.

"J. V. Fleming,
"First Party.
"Jno. O. Banks,
"Oliver J. Todd,
"Second Parties."

Though in form an action in trespass to try title, both by general and special allegations, this suit was, in effect, an action by appellant, Fleming, against appellees Todd and Banks and their vendees, to construe the foregoing instruments. After pleading his title generally in trespass to try title, appellant specially pleaded that the deed and contract were subject to the following constructions: (a) The survey called for in the contract was to be made on or before February 1, 1921, or February 1, 1922, or within a reasonable time from the date of the contract. Todd and Banks were to take the initiative in making the survey by selecting the surveyor, and appellant, after the survey, was to pay one-half the expenses. As sustaining this inference from the contract it was alleged that appellant lived in Arizona and because he was a nonresident the parties contracted with the understanding that Todd and Banks would take the initiative in making the survey, and the words in the contract were used with that meaning; it was the intention of the parties that appellant would execute to Todd and Banks a new deed for the excess, and without this deed no title to the excess was to pass to Todd and Banks; this deed was to reserve a vendor's lien as security for the payment of the notes to be executed by Todd and Banks for the excess acreage; upon the delivery of this deed to Todd and Banks they were to execute to appellant their vendor's lien notes for the excess. (b) As a necessary condition to vest the title to the excess acreage in Todd and Banks, the survey was to be made, the new deed was to be executed to Todd and Banks, reserving the vendor's lien, and Todd and Banks were to execute vendor's lien notes for the purchase price of the excess acreage, which notes were to be paid with the notes called for in the original deed. (c) The deed, as executed, did not convey the title of the excess acreage to Todd and Banks; this title at all times remained in appellant; Todd and Banks had only a contract for title to the excess acreage. (d) If the deed conveyed the excess acreage to Todd and Banks, they "must be considered as trustees, holding the excess acreage in trust for Fleming."

Having thus construed the deed and contract, appellant pleaded his title as follows: (1) By general allegations in trespass to try title. (2) Owning the title when the deed and contract were executed, it was never divested out of him. (3) Todd and Banks having only an unexecuted contract for title to the excess acreage, they never acquired title thereto. (4) The vendor's lien notes contemplated by the contract not having been paid, appellant in May, 1926, rescinded the sale and reinvested himself with title to the excess acreage; Todd and Banks orally consented to this rescission. (5) At the most Todd and Banks were only trustees for appellant, holding in trust for him the title to the excess acreage. (5) The execution of the deed and contract was induced by the fraud of Todd and Banks, in that at the date of the execution they never intended to execute the conditions assumed by them under the contract, which fraudulent intent they concealed from appellant. Because of this alleged fraud Todd and Banks never acquired title to the excess acreage. It was further alleged that Todd and Banks, though without title to the excess acreage in 1929, had the Lizzie Higginbotham Survey correctly surveyed, when it was found to contain an excess acreage of 335 acres. After the survey Todd and Banks asserted a claim to this land; as soon as appellant knew of the survey and of the claim of Todd and Banks, he filed this suit; the suit was filed in 1929. As a further basis for title it was alleged that Todd and Banks, after the execution of the contract, agreed verbally to change its terms, thereby assuming the duty of having the survey made; not having executed this duty, they never acquired any title to the excess, which at all times remained in appellant. The prayer was for an undivided interest of 335 acres in the Lizzie Higginbotham survey. Also, having alleged that the defendants named in his petition had fraudulently, illegally, and wrongfully exploited the land for oil, he prayed for judgment against the defendants Todd and Banks, jointly and severally, in the sum of $250,000.

There was no claim made by appellant that the notes recited in the deed were unpaid, but

by general intendments we think payment was alleged, and, if we correctly understood appellant's position on oral argument, it was so conceded. It should be further said that appellant alleged no facts and prayed for no relief against Todd and Banks upon the notes to be executed by them according to the terms of the contract, for the excess acreage; that is to say, appellant pleaded for no personal judgment with foreclosure of vendor's lien. His prayer was only for title to the land. Appellees answered by general demurrer and exceptions raising the issue of limitation. They also pleaded special defenses not material upon this appeal, since the general demurrer was in all things sustained and, appellant declining to amend, the appeal was prosecuted from the ruling of the trial court upon the general demurrer.

### Opinion.

■ Appellant correctly asserts that the deed and contract, executed contemporaneously therewith, must be construed together to ascertain the intent of the parties in their execution and delivery; and that conditions necessarily implied from the express provisions of the two written instruments are as much a part thereof as if expressly written therein. But where written contracts are pleaded in haec verba and are unambiguous, it is also the law that the rights of the parties must be determined by the court, as a matter of law, upon the construction of the contracts, and all allegations of construction not supported by the terms of the contracts themselves are subject to demurrer and cannot be considered by the court in support of the petition. Thus in Lennard v. Texarkana Lumber Co., 46 Tex. Civ. App. 402, 94 S. W. 383, 386, it was said: "Where the writing relied on as evidencing the contract alleged, as in this case, is set out in haec verba, whether or not it is obnoxious to the statute of frauds must be determined by the court without regard to the construction placed upon it by the plaintiff as manifested by the allegations of his petition. In such case the proper decision of the question depends upon the very terms of the contract itself, or a reasonable interpretation thereof, and cannot be controlled by inconsistent allegations therewith." See also the following additional authorities: San Antonio v. Lewis, 9 Tex. 69; Self v. King, 28 Tex. 554; Alstin's Ex'r v. Cundiff, 52 Tex. 461; Bruner Bros. v. Strong, 61 Tex. 557; Soell v. Hadden, 85 Tex. 187, 19 S. W. 1087.

■ Under the authorities just cited, the allegation in the petition that Todd and Banks were trustees for appellant for the excess acreage was subject to demurrer. The language, both of the deed and the contract, expressly negatives that construction. Whatever the deed conveyed was conveyed by absolute title, subject only to the recited vendor's lien. Neither the deed nor the contract contains language making Todd and Banks trustees for appellant, nor is the language of these instruments subject to that inference or construction. The plain language of these instruments being that of absolute title, under no rule of construction was it possible to ingraft upon them a trust relation.

■ The allegation of title by rescission was also subject to demurrer. Notwithstanding what we have said above construing the petition as to the notes recited in the deed, if it should be correctly construed as resting the rescission upon these notes, appellant can have no relief upon such allegations because these notes were barred by limitation in May, 1926, the date of the rescission. If the rescission rests upon a contract to execute notes to mature February 1, 1921, and February 1, 1922, with the notes recited in the deed, such notes and contract were also barred in May, 1926. Again, if the petition be construed as pleading a contract whereby appellant could compel Todd and Banks to execute notes for the excess acreage, his action upon the contract was within the four years' statute (Rev. St. 1925, art. 5527) and, therefore, barred in May, 1926. The bar of the notes operated also as a bar of the claimed vendor's lien. The bar of the vendor's lien made the title in Todd and Banks absolute. It follows that, having lost his superior legal title by limitation, appellant was without right or power to declare a rescission in May, 1926.

■ The allegation that Todd and Banks consented orally to the rescission was also subject to the demurrer. The absolute title being vested in them, it could not be divested out of them and reinvested in appellant by the alleged oral agreement. Sanborn v. Murphy, 86 Tex. 437, 25 S. W. 610.

■ If the allegations imposing upon Todd and Banks the duty to have the land surveyed and the alleged oral contract to that effect, made after the execution of the written instrument, were made by appellant for the purpose of tolling the statutes of limitation in favor of any issue of title pleaded by him to the land in controversy, such allegations were all subject to demurrer. This follows because the express language of the contract negatives the contention that Todd and Banks were to take the initiative in making the survey. As this language was clear and unambiguous, it cannot be construed in the light of any oral contemporaneous agreement that Todd and Banks were to take the initiative in making the survey. The subsequent parol agreement, changing the written contract and imposing this duty upon Todd and Banks, was without legal effect upon the title of the land sued for. This follows because if appellant correctly construes his contract as relating to and controlling the sale of real estate, it was required by law to be in writing (Rev. St. 1925, art. 3995) and could not be modified by a subsequent oral agreement. Dial v. Crain, 10 Tex. 444; Gardner v. Sittig (Tex. Com.

App.) 222 S. W. 1090; Shaller v. Allen (Tex. Civ. App.) 278 S. W. 873. So the rights of the parties must be determined by the language of the contract. But if it was not required by law to be in writing, it was subject to change by a parol agreement, in which event it ceased to be a contract in writing and rested entirely in parol. Under this proposition the general rule is thus stated by 10 Tex. Jur. 358, supported by Maddox Motor Co. v. Ford Motor Co. (Tex. Com. App.) 23 S.W.(2d) 333: "A written contract which is not required to be in writing may be modified or amended by a subsequent parol agreement, in which case, as a general rule, the entire contract becomes an oral one." Resting in parol, it could not affect title to land.

The allegations of the petition to the effect that a proper construction of the deed and contract required appellant to execute a new deed to Todd and Banks for the excess acreage, reserving a vendor's lien against the same to secure the purchase price, and that Todd and Banks were to execute vendor's lien notes for the purchase price thereof, and in the alternative that appellant at all times held the legal title to the excess acreage, which was not divested out of him, and further in the alternative that Todd and Banks only held a contract for title to the excess acreage, have no support in the written instruments pleaded by appellant and were, therefore, subject to the general demurrer. By language so clear in intent as not to be subject to construction, appellant, by the language of the contract, sold to Todd and Banks "the Lizzie Higginbotham Survey," and by the language of the deed he sold them "all that certain tract and parcel of land lying and being situated in Orange County, Texas, and more particularly described as the Lizzie Higginbotham Survey of land, certificate No. 689, and containing 368½ acres of land"; and the deed reserved a vendor's lien only to secure the payment of the notes recited in the deed, and as to these notes and the vendor's lien, reserved to secure their payment, it was expressly agreed and stipulated "that the vendor's lien is retained against the above described property, premises and improvements, until the above described notes, and all interest thereon are fully paid according to their face and tenor, effect and reading, when this deed shall become absolute." As stated above, there is no allegation that these notes were not duly paid, nor is there any pleading or prayer for any kind of relief on the theory that the notes were not duly paid, but by general intendments, under the allegations in the petition, it may be inferred that these notes were duly paid and also, as stated above, if we correctly understood appellant's position on oral argument, it was so admitted. On the face of the deed, when these notes were paid appellees' title to all the Lizzie Higginbotham survey was made absolute.

The description upon the face of the deed was sufficient to convey all the acreage contained in the Lizzie Higginbotham survey. Temple Lumber Co. v. Mackechney (Tex. Com. App.) 228 S. W. 177; Mackechney v. Temple Lumber Co. (Tex. Civ. App.) 197 S. W. 744; Walker et al. v. Gore et al. (Tex. Civ. App.) 257 S. W. 322; McCoy v. Pease, 19 Tex. Civ. App. 657, 48 S. W. 208; League v. Scott, 25 Tex. Civ. App. 318, 61 S. W. 521. As the deed conveyed all the land in the survey, and as the title to this land was made absolute by the payment of the recited vendor's lien notes, no title remained in appellant to any part thereof, and no deed from him was required or contemplated by the contract to vest title in Todd and Banks to the excess acreage.

Apart from the issues of limitation discussed above, there is no merit in the allegations that the deed and contract contemplated that the notes to be executed for the excess acreage were to be vendor's lien notes. In the first place, it was made to appear that appellant and appellee Oliver J. Todd were learned in the land law of Texas and well knew the difference between a vendor's lien note and a plain note of hand. Knowing accurately the meaning of the language used by them, they must be held to the construction to be deduced from the language used. Had they intended to contract for vendor's lien notes, doubtless they would have so stipulated. Again these two instruments must be construed together so as, if possible, to give effect to all the language used by both of them. To read into these instruments a condition requiring the execution of vendor's lien notes for the excess acreage would absolutely nullify the condition of the deed that upon the payment of the notes recited therein the title thereby conveyed was to become absolute. That the parties were contracting upon their personal responsibility also follows from their respective duties under the contract. When the deed was executed it was not known whether the Lizzie Higginbotham survey contained an excess acreage or whether there was a shortage in its recited acreage. If a shortage was disclosed, the contract provided the manner in which appellant was to reimburse Todd and Banks for the excess payment, but no security was required of him therefor. He was not required to hold in his possession the notes given him by Todd and Banks, nor was any security taken that he would convey other land in payment of the shortage or would retain title to other land sufficient to compensate Todd and Banks for the shortage. Thus, the duty imposed upon appellant was absolutely upon his personal responsibility, and without security. Upon the language of the contract, that being the duty imposed upon appellant, a like construction should be given the duty imposed upon appellees.

There is no merit in the allegation that with the secret purpose upon their part

not to execute the contract, Todd and Banks fraudulently induced appellant to execute it. The contract was executed in 1920. It was alleged that the survey was to be made before February 1, 1921, or February 1, 1922, or within a reasonable time after the execution of the contract. If fraud existed, as appellant alleged, he was by law visited with notice of the fraud within a reasonable time after Todd and Banks refused to perform their contractual obligations, and under all authority the delay of nine years to file suit was so unreasonable as to bar the cause of action as a matter of law. Gulf Production Co. v. Palmer (Tex. Civ. App.) 230 S. W. 1017. Again, the allegations of fraud were subject to general demurrer because the only possible relief under these allegations was the cancellation of the deed and contract, which were not prayed for.

Finally, as controlling the construction of these two instruments, we think it should be said that by the plain import of their language appellant conveyed to Todd and Banks all the Lizzie Higginbotham survey, that by their language the title to the land thus conveyed became absolute upon the payment of the notes recited in the deed, that the only office of the contract was to provide for a resurvey of the land, and if the resurvey disclosed a shortage, to reimburse Todd and Banks, and if an excess, to provide a method of payment therefor, that the only possible relief to appellant under the deed and contract was a personal action against Todd and Banks for the purchase price of the excess, which relief was not prayed for, that had the petition prayed for this relief it was barred by the four years' statute of limitation.

By specially pleading his title, appellant abandoned his general allegations in trespass to try title and was restricted to his special pleading. Snyder v. Nunn, 66 Tex. 255, 18 S. W. 340. As the special allegations were subject to the general demurrer, the general demurrer was properly sustained against the whole petition. It follows that the judgment appealed from should be affirmed, and it is accordingly so ordered.

Affirmed.