### DUE et al. v. W. T. RAWLEIGH CO.
#### No. 2327.

Court of Civil Appeals of Texas. Beaumont. Feb. 16, 1933.

James Peavy, Fairchild & Redditt, and W. J. Townsend, all of Lufkin, for appellants.

Jack Scarborough, of Lufkin, J. W. Yancy, of Houston, and Mantooth & Denman, of Lufkin, for appellee.

WALKER, Chief Justice.

Appellee, the W. T. Rawleigh Company, instituted this suit against appellant Sam H. Due, and his coappellants, W. J. Jordan, Wyatt G. Chancey, and L. W. Denman, to recover the sum of $1,156.73 for products of appellee sold to appellant Due under the following contract and surety agreement:

"1. In consideration of the execution and

acceptance of this agreement, and the covenants hereinafter expressed, the W. T. Rawleigh Company, an Illinois corporation, hereinafter called the Seller, agrees to sell and deliver to the undersigned Buyer f. o. b. cars Memphis, Tennessee, or any other point agreed upon, such of its products as the Buyer may order, on time, at current wholesale prices; also, if desired will sell Buyer a Rawleigh-Ford Auto Body, Wagon or Sample cases for cash, or partly for cash, or wholly on time, such as the Buyer may choose from bulletins or other descriptions; it being agreed that the kind and quantity of merchandise sold is to be optional with Seller.

"2. Buyer, in consideration of the agreements herein, agrees to pay said Seller, in full, for all goods, purchased under this Contract, by cash, or by installment payments satisfactory to the Seller, at invoice prices and according to the terms and conditions thereof, and subject to such cash discounts as may be shown in current discount sheets, and to paragraph 3 hereof.

"3. It is mutually agreed that either party may terminate this Contract by written notice at any time, and when so terminated all accounts between said Buyer and Seller shall become due and payable immediately. If this contract is not so terminated it shall expire on December 31, 1926; it being agreed that a new Contract may be entered into for the succeeding year, but the refusal or neglect of the Buyer to furnish an acceptable Contract, or the refusal of the Seller to accept such Contract shall not in any way affect the payment of the account incurred hereunder.

"4. If the business relations be terminated for any reason the Seller agrees to purchase from the Buyer at wholesale prices current when goods are received any merchantable Products Buyer may have on hand (Sample Cases, Wagons, Auto Bodies and discontinued Products excepted) provided goods are returned promptly by prepaid freight to point designated by Seller, the Buyer to pay the actual cost for receiving overhauling and inspecting same.

"5. It is mutually understood and agreed that this is a Contract of Buyer and Seller, and that the Buyer is not the agent or representative of the Company for any purpose whatsoever, but is the sole owner and manager of his business, and that he expressly reserves the exclusive right to determine the price, terms and conditions upon which, and the place where, he will sell the merchandise he buys from the Seller it being mutually understood and agreed that when the Seller delivers the merchandise f. o. b. cars to Buyer at point of shipment, the merchandise becomes the property of the Buyer and the Seller retains no right, title, interest or control over said merchandise.

"6. Further it is mutually understood and agreed that the Seller has no territorial rights it can legally convey, and that it does not undertake to and does not give Buyer any exclusive selling or territorial rights whatsoever, nor does the Seller restrict or limit the place or locality where said Buyer shall sell or dispose of the merchandise he buys from the seller; it being mutually and fully understood that the Buyer is in business for himself and that the Seller does not undertake in any way to control Buyer in the conduct of his business.

"7. With the express understanding that it shall impose no legal restrictions whatsoever and that it shall not alter or modify the written terms or conditions of this contract, nor be considered as orders, directions, or instructions, or binding in any way upon the Buyer and that it shall be considered only as advice and suggestions intended only to aid the Buyer in improving his sales, collections and service to his customers, (which advice or suggestions he may follow or not as he may choose), the Seller will furnish Buyer from time to time with Rawleigh Sales Service and Collection methods consisting of Rawleigh's Weekly, Rawleigh Methods, and other books, bulletins, service sales or collections letters, and other letters and literature; it being intended and mutually agreed that this contract shall be the sole and only binding agreement between the parties hereto, and that it shall not be changed or modified in any way, or by any person, except such change or modification shall be first reduced to writing, signed, and agreed to by both parties, and the seal of the Seller thereunto affixed.

"8. It is further specially agreed that all accounts incurred under this contract not paid when due shall at once become due and payable at Bonham, in Fannin County, Texas, with ten per cent (10%) interest per annum from maturity and ten per cent (10%) additional thereon as attorney's fees after such account be placed in the hands of an attorney for collection.

"In witness whereof, the parties hereto have set their hands and seal, the Seller in its corporate name by its President thereunto authorized, and its corporate seal hereunto affixed, and the Buyer in his own proper person.

"Accepted Oct. 19, 1925, at Memphis, Tenn.
"The W. T. Rawleigh Company,
"By W. T. Rawleigh, President
"Buyer Sign here:
"[Signed] Sam H. Due [Seal]
"P. O. Address, Lufkin, Texas."

The surety agreement sued upon was physically attached to the contract, and was as follows:

"In consideration of the W. T. Rawleigh Company, the above named Seller extending credit to the above named Buyer, we, the undersigned, do hereby jointly and severally en-

ter ourselves as sureties, and unconditionally promise, guarantee and agree to pay the said Seller for all Products sold and delivered to the said Buyer under the terms of the above contract, hereby expressly consenting and agreeing to all the terms and conditions thereof. We hereby expressly waive notice of the acceptance of this contract and of the shipment of goods to the Buyer, and of extension of credit to the Buyer, and of the extension of time in which to pay for the goods so purchased, and waive all notice of any nature whatsoever. We also agree that any statement made by the Buyer as to the amount of indebtedness due at any time shall be binding upon us. We also agree that it shall not be necessary for the Seller to first exhaust its remedies against the Buyer before proceeding to collect for us. This undertaking is to be an open one and shall continue without regard to the residence of the Buyer, or the location or manner of conducting his business until the account is fully paid. It is mutually agreed that this Contract is conclusive and binding upon the party or parties who sign it, whether it is signed by any other party or parties or not, and that any statement or representations made to any of the undersigned sureties by any persons either as to who or how many parties will sign this surety agreement or as to any other matters not fully expressed herein shall not affect the rights of the Seller. It is further understood that there are not conditions or limitations to this undertaking except those written or printed herein at the time of signing hereof, and that after execution no alteration, change or modification shall be made except as provided for in the terms of the foregoing contract between the Buyer and Seller, and that any notice in any way affecting the rights of the Seller must be delivered by registered mail to the Seller at its office at Memphis, Tennessee.

"In Witness whereof we have set our hands and seal in testimony hereof.

| Sureties Names (Signed) | Occupation | P. O. Addresses |
|---|---|---|
| W. J. Jordan (Seal) | Farmer & Ginner | Lufkin, Texas |
| Wyatt G. Chancey (Seal) | Farmer | Pollok, Texas |
| L. W. Denman (Seal) | Farmer | Lufkin, Texas |

"Sureties sign above in person, giving occupation and P. O. Address. Write Plainly.

"The above sureties are entitled upon request at any time to a statement of Buyer's account."

The amount sued for was evidenced by an itemized account, duly verified. The answer of appellants was sufficient to support their propositions of error, and portions of it will be hereinafter given in discussing their propositions. The judgment was upon a jury verdict, instructed in favor of appellee for the amount sued for.

■ Appellee's petition was not bad on general demurrer, on the ground that it failed to allege that it was "duly" incorporated, as required by article 1999, R. C. S. 1925. The allegations of the petition, on this issue, were: "Comes now the W. T. Rawleigh Company, a corporation engaged in interstate commerce, hereinafter called plaintiff, complaining of" the parties named above as appellants; the contract sued upon was plead in hæc verba in the first paragraph of the petition wherein appellee was described as "an Illinois corporation." And in the affidavit to the account, which was specially pleaded, appellee was described as "a corporation organized and doing business under the laws of the State of Illinois, with its legal domicile in said state." The point is not raised by special exception, but only by general demurrer. In the absence of a special exception, calling the omission in the petition specifically to the attention of the trial court (Way v. Bank of Sumner [Tex. Civ. App.] 30 S. W. 497; Womack Const. Co. v. Rhodes [Tex. Civ. App.] 283 S. W. 1108, 1109), the allegations constituted a sufficient compliance with the statute. Bury v. J. E. Mitchell Co. (Tex. Civ. App.) 74 S. W. 341. That case is in point upon the proposition and was cited with approval by the Court of Appeals of Kentucky in Martin v. Kentucky Lands Inv. Co., 146 Ky. 525, 142 S. W. 1038, Ann. Cas. 1913C, 332. See, also, Reliable Iron Works v. First State Bank & Trust Co. (Tex. Civ. App.) 241 S. W. 592. The strict rule of pleading upon this point, announced by our Supreme Court in Bank of Alabama v. Simonton, 2 Tex. 531, and Holloway v. Railway Co., 23 Tex. 465, 76 Am. Dec. 68, was abrogated by article 1999 as and when originally enacted.

■■ The petition was not subject to the plea in abatement upon the point that it failed to allege that appellee had a permit to do business in the state of Texas, nor was appellant entitled to a judgment upon the ground that appellee failed to prove this issue. The affirmative allegations of the petition were that it was "a corporation engaged in interstate commerce" and the contract upon which appellee's products were sold was pleaded in hæc verba. There was no suggestion in the petition or the evidence (as received by the court) that appellee was engaged in business in this state, or that the demand arose from an intrastate transaction. On these facts, it was not necessary for appellee to allege that it had a permit to do business within this state, in order to avoid the force of the plea in abatement. Blackwell-Wielandy Co. v. Sabine Supply Co. (Tex. Civ. App.) 38 S.W.(2d) 654. See, also, 11 Tex. Jur. pp. 177–182. As it was not required to allege that fact, of course it was not required to prove it.

■■ That the contract was unilateral, as originally executed, as appellant insists, may be conceded, but that concession would not render the instructed verdict erroneous, because it had been executed by the parties to the extent of the relief sued for by appellee and no relief was asked under it except for the products sold and delivered. The rule is that want of mutuality is no defense to the enforcement of an executed contract. 13 C. J. pp. 334, 335; 10 Tex. Jur. pp. 170, 171. W. T. Rawleigh Co. v. Lemon (Tex. Civ. App.) 276 S. W. 1115, is in point upon its facts.

■■ Appellants concede that the contract, as pleaded by appellee in its petition, was not in violation of the anti-trust statutes, but their contention in the lower court was that the contract, interpreted in the light of actual practices between the parties, was prepared and signed by them for the purpose of violating the anti-trust laws within this state and that the obligation arose in consummation of this purpose; that the true purposes of the contract were to be ascertained by extraneous proof of what the parties said and did in its execution, despite what the contract said about the all-comprehensiveness of its provisions. Upon this issue appellants answered by the following special plea:

"These defendants would further expressly plead that while said plaintiff required a written contract, defining its obligations and duties, and so specifying by various provisions that it was not violating the Anti-Trust Laws of the State of Texas, yet these defendants would allege that said provisions of the contract were merely used as a method of showing plaintiff's wilful intention to violate the anti-trust laws of the State of Texas, as plead herein, and said plaintiff, its officers and agents are compelling defendant, Sam H. Due to sign a contract, yet it compelled him to carry out its instructions by doing business in the State of Texas, and so notified him, ordered and directed him to confine his sales to a fixed territory in the State of Texas, further advising and instructing him that if he sold out of said territory, he would be discharged, further requiring him to devote all of his time to said territory to the sale of said products, and said plaintiff further fixed the price at which the products should be sold, and so advised the defendant, Sam H. Due the violations of its instructions would result in a cancellation of the contract, and discharge of said defendant, by reason of all of which these defendants allege that plaintiff's intentions were, and plaintiff did violate the Anti-Trust Laws of the State of Texas.

"That by way of further answer and a special plea in their behalf, these defendants say that the contract sued upon does not constitute the entire contract between the plaintiff and defendant, and that before and after the execution of the so-called written contract declared upon a plaintiff, by instructions, both verbal and in writing, and by printed literature by letters, circulars, magazines and other printed matter imposed upon defendant, Sam H. Due, terms, conditions and requirements as parts of said contract, in making disposition of the products so purchased from the W. T. Rawleigh Company, which terms, conditions and requirements were, and are in violation of the Anti-Trust Laws of the State of Texas, Revised Statutes of Texas, 1925, which are here referred to and made a part of this Answer, in that prior and subsequent to the execution of the so-called written contract declared upon, plaintiff, by letters, documents, magazines and circulars, oral instructions, required the defendant, Sam H. Due, as a part of said contract, and as a condition of selling him its goods, to select certain territory and to confine his resale to said territory, which was in Rusk County, and also required said defendant, Sam H. Due, to devote the whole of his time to the sale of plaintiff's exclusive & hand no other products, and also plaintiff, by means of the above mentioned methods, required Sam H. Due to sell said goods at a price fixed by plaintiff. That W. T. Rawleigh & Company agreed with defendant, Sam H. Due, in addition to the above, that they would not allow any other person to sell the same products in his territory, all of which made said contract null and void and unenforceable."

Appellee's special exceptions to this plea were overruled by the trial court. Upon the trial appellants offered evidence in support of every material allegation of this answer, that is to say, appellants offered evidence raising the issues: (a) That after the contract was executed, appellee required Due to confine himself to a specific territory and that he agreed to this demand and that a violation of these instructions would result in his discharge; (b) that appellee required him to devote all his time to the assigned territory in the sale of its products; (c) that appellee fixed the price at which the products were to be sold and so advised Due and that a violation by him of this instruction would result in the cancellation of the contract, and that Due received this instruction and obeyed it in order to maintain his contract; (d) that appellee required Due to handle no other products except those purchased by him from appellee; (e) that appellee further agreed with Due that it would not allow any other person to sell its products in his territory. This testimony was all excluded by the trial court on appellee's objection that it would vary the written contract by a parol agreement and would thus be in violation of the specific provisions of paragraphs 6 and 7 of the contract. There is no merit in the proposition upon which the proffered testimony was excluded. Since this contract was not

one which the law required to be in writing, it was subject to change by a subsequent parol agreement, notwithstanding the express provision of the contract that it could not be changed or modified "except such change or modification shall be first reduced to writing, signed and agreed to by both parties, and the seal of the seller thereunto affixed." Fleming v. Todd (Tex. Civ. App.) 42 S.W.(2d) 123. The legal effect of the testimony offered by appellants was most satisfactorily stated by Judge Nickels, for the Commission of Appeals, in W. T. Rawleigh Co. v. Land, 115 Tex. 319, 279 S. W. 810, 814. In approving Judge Nickels' opinion, Chief Justice Cureton said: "Consideration of the facts convinces us that the written contracts between the parties, interpreted in the light of the actual practices between them, were prepared and signed for the purpose of violating the Anti-Trust Laws of this state within the state, and that the obligations arose in consummating this purpose. This leads to our concurrence in the opinion of the Court of Civil Appeals on motion for rehearing, and in the recommendation that the judgment of the Court of Civil Appeals be affirmed, and it is so ordered." In support of the ruling of the court, appellee cites W. T. Rawleigh Co. v. Fish (Tex. Civ. App.) 290 S. W. 798; McConnon & Co. v. Marshall (Tex. Civ. App.) 280 S. W. 323. There is nothing in either of these cases conflicting in the least with the holding of Judge Nickels in the Land Case. In fact, that case is cited in the Fish Case in support of its holdings. We are in thorough accord with the holding in both of appellee's cases, that the question is not, what was the business policy of the parties nor what appellants did under the advice and direction of the appellee in choosing territory and making sales; the issue is, what did his contract obligate him to do? As said by appellee's cases, "unless he bound himself by contract to do the offensive things, although he did them, he cannot invoke the anti-trust laws to defeat the debt he owes." This proposition involves the very contention of appellants. They pleaded and offered testimony that Due was required by appellee to do the offensive things and, in order to maintain his business contract with appellee, that he followed the advice, instructions, and directions given him from time to time.

Under Judge Nickels' opinion in the Land Case, the excluded testimony was also admissible in support of appellants' plea in abatement on the issue that appellee was engaged in intrastate business.

■ Appellants denied under oath the correctness of the account sued upon, pleading that it had been paid in full. On this issue appellant Due proposed to testify as follows:

"Q. Did you, at the request of the W. T. Rawleigh Company, deliver to customers merchandise in excess of two thousand dollars, for which you did not receive cash on your account? A. I did.

"Yancy: We object to the question and answer of the witness because it is an attempt by parol testimony to vary the terms of a written contract.

"Court: The objection is sustained. Gentlemen of the Jury, you will not consider the answer to that question.

"Redditt: We except to the ruling of the Court and want a full bill.

"Court: You may have a full bill."

The exclusion of this testimony was error.

For the errors discussed, the judgment of the lower court is reversed and the cause remanded for a new trial.

Reversed and remanded.